IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| CHRISTOPHER HOWARD PAIGE and MICHELE ANNA PAIGE, | : | BANKRUPTCY NO.: 5-11-bk-05957-JJT |
| DEBTORS | : | |
| LERNER MASTER FUND, LLC, | : | {**Nature of Proceeding**: Defendants' Motion to Dismiss and/or Strike LMF's Untimely Motions and Complaint (Doc. #4)} |
| PLAINTIFF | : | |
| vs. | : | |
| CHRISTOPHER HOWARD PAIGE and MICHELE ANNA PAIGE, | : | |
| DEFENDANTS | : | ADVERSARY NO.: 5-12-ap-00067-JJT |

# **OPINION**[1]

Michele and Christopher Paige filed Chapter 7 bankruptcy on August 29, 2011. Prior to the bankruptcy, under legal counsel of Christopher, Michelle Paige[2] managed a young hedge fund that Lerner Master Fund, LLC (hereinafter "LMF")[3], as the fund's sole investor, entrusted 40 million dollars. The contractual relationship between Michelle Paige and LMF was defined

---

[1] Drafted with the assistance of Brianna Ford, Judicial Extern.

[2] It appears that either one or both of the debtors were principals in various forms of partnerships and/or corporations that may have actually provided some insulation from liability to LMF. Since the record on this relationship has not been fully developed, for the purposes of this opinion, references to Michelle Paige shall include all these related entities.

[3] In his opinion, Chancellor Strine of the Delaware Chancery Court found that on "October 31, 2007 the Lerner Fund and the Paiges executed" the two documents defining the parties' contractual relationship. However, it's unclear to which entity the "Lerner Fund" actually refers. On page 7 of that opinion, Chancellor Strine ambiguously refers to the "Lerner Fund" as either Brooklyn NY Holdings LLC or the actual Lerner family. Doc #50, Exhibit 4. However, in the court order issued shortly thereafter, Strine subsequently refers to the Lerner Master Fund, LLC as the "Lerner Fund." Doc #50, Exhibit 5. While for the purposes of this opinion we will use "LMF," this ambiguity, and any related liability issues, should be kept in mind.

by two distinct documents. One contract, the seeder agreement[4], seemingly permitted immediate withdrawals of capital at the end of a three-year lockup period, while a general contract ostensibly applying to all the firm's investors (the partnership agreement) gave Ms. Paige the discretion to postpone withdrawals that would sap the fund of at least 20% of its current value (the so called "gate provision"). At the end of the three-year period, LMF requested the return of its entire investment but Ms. Paige refused. The Paiges then sued LMF in the Delaware Court of Chancery seeking a declaratory judgment that the partnership agreement allowed them to restrict LMF's ability to withdraw all of its capital. LMF countersued for breach of contract, breach of fiduciary duty, and a declaratory judgment to enforce the LMF right to withdraw its entire investment.

Agreeing with LMF, the Delaware court found Ms. Paige liable for breach of contract. Because Michelle Paige's actions were aimed at maximizing her own management fees at the expense of the fund's only major investor, she was also found liable for breach of fiduciary duty. However, the court dismissed a number of LMF's claims against Mr. Paige without prejudice.

Several days after the issuance of the judgment, the Paiges filed for Chapter 7 bankruptcy in this Court. The initial § 341 creditors' meeting was rescheduled, and five days prior to the deadline to file a complaint challenging the dischargeability of the Paiges' debt, LMF filed a Motion to Extend the filing deadline. The Paiges initially objected to the extension, but the attorneys for both parties signed a joint stipulation giving LMF a five day extension from the date of this Court's disposition of LMF's Motion to Extend the filing deadline. Shortly

---

[4] A "seeder agreement" is a contract that a new business negotiates with a "seed" investor who provides it with the funds necessary to begin its operations. The seed investor's compensation will sometimes include a percentage of the management fees.

thereafter, the Paiges' attorney withdrew from the case and LMF filed its dischargeability complaint. The Paiges dispute that they provided their attorney the authority to make any such stipulation, concluding that the deadline extension agreement is not binding on them.

The courts recognize three types of attorney authority, i.e., express, implied, and apparent authority. *Tiernan v. Devoe*, 923 F.2d 1024, 1037 (3d Cir. 1991). Express authority will be found when a client gives his attorney explicit instructions regarding an action, and therefore binds himself by the attorney's compliance. *See Tiernan*, 923 F.2d at 1033. Express authority is required for an attorney to settle a cause of action on behalf of a client. *See Tiernan v. Devoe*, 923 F.2d at 1034; *Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir. 1986); *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir. 1966). Merely retaining a lawyer will not suffice for express authority; there must be some affirmative action taken by the client conferring that authority. *See Tiernan*, 923 F.2d at 1034 (requiring conduct by the client); *Freeman v. McCarthy (In re Gsand)*, 153 F.2d 1001, 1006 (3d Cir. 1946). For matters that are distinguished from the cause of action itself, however, such as stipulations and agreements of procedure, attorney authority may initially be presumed. *See In re Gsand*, 153 F.2d 1001, 1005 (3d Cir. 1946) (quoting *Cole v. National Casket Co. Inc.*, 101 Pa. Super. 207 (1931)); *Archbishop v. Karlak*, 299 A.2d 294, 297 (1973) (quoting Standard Pennsylvania Practice, vol. 1, Chap. 2 § 214 for implied authority)*; Starling v. W. Erie Ave. Bldg. & Loan Ass'n*, 3 A.2d 387, 388 (Pa. 1939)(stating implied and apparent authority attach to the attorney's broad powers for handling matters that are incidental to the cause of action). However, this presumption can be rebutted by factual evidence that the client would have objected to the attorney's conduct. *See Garabedian v. Allstates Eng'g Co.*, 811 F.2d 802, 803 (3d Cir. 1987).

Implied authority will be found when there are written or spoken words or other conduct by the client that justify an inference that an attorney may act on his client's behalf. *See Tiernan*, 923 F.2d at 1034; *Tucker v. Tucker*, 87 A.2d 650, 656 (Pa. 1952). In *Tucker*, for instance, a client's deference to his attorney's prior performance concerning the logistics of a sale created implied authority for the attorney to handle related matters in the future.

In matters concerning the management of the litigation, implied authority is initially presumed for the sake of judicial efficiency; an attorney may typically enter into procedural stipulations and agreements. *See City of Philadelphia v. Schofield*, 101 A.2d 625, 627 (1954) ; *Grocery & Food Warehousemen Local Union No. 635 v. Kroger Co.*, 70 A.2d 218, 219 (Pa. 1950); *see generally, In re Gsand*, 153 F.2d 1001, 1005 (quoting *Starling*, 333 Pa. 124, regarding general powers of attorney during litigation); *Barber-Coleman Co. v. Magnano Corp.*, 299 F. 401 (1st Cir. 1924). In *Kroger*, implied authority was found where attorneys of both parties stipulated in writing to a modified litigation procedure. The court held that an attorney had implied authority to enter into stipulations and agreements regarding procedural matters, and a client was bound by the attorney's action when the client continued with the proceedings.

Apparent authority is demonstrated through a client's manifestations to a third party that the client's attorney has the authority to act on the client's behalf. *See Tiernan v. Devoe*, 923 F.2d at 1034; *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989); *Swartz v. D.S. Morgan & Co.*, 29 A. 974, 975 (Pa. 1894). A positive action or direct communication by the client to the third party must be shown. *See Fennell*, 865 F.2d at 502; *see also Edwards v. Born, Inc.*, 792 F.2d 387 (instructing the lower court to look for direct communication between the defendants and plaintiff that would reasonably lead the defendants to believe the attorney had permission to

settle).

Here, because there is no evidence to suggest that the Paiges explicitly instructed their counsel to enter into the stipulation, Paiges' counsel, Attorney Jill Spott, did not possess express authority. Nor did Attorney Spott have apparent authority to agree to the joint stipulation. There is no evidence that the Paiges had any direct communication with LMF or its attorney from which to infer that Ms. Spott had the authority to agree to the joint stipulation. However, because I find that the short extension of the objection to discharge deadline involved mere procedural issues, I find that it is initially presumed that Spott had the implied authority to agree to the stipulation. The joint stipulation did not deny the Paiges any substantive rights; it merely dealt with a filing deadline, set, not by statute, but by Federal Rule of Bankruptcy Procedure 4007. The joint stipulation did not burden the Paiges in any way, nor did it deprive the Paiges of the dischargeability of their debt. The stipulation was an efficient method of proceeding with litigation since it obviated the need for an additional hearing to determine whether the Motion to Extend had proper cause.

However, this presumption may be rebutted by factual evidence suggesting that the Paiges actively opposed the agreement.

The Paiges testified that they generally kept track of Ms. Spott's handling of the case and that they requested information regarding her objection to LMF's Motion to Extend and the proposed stipulation. The Paiges appear to have had a hands-on approach in the proceedings, and at one point, LMF counsel testified that Ms. Spott would seek the Paiges approval before engaging in further communications regarding the stipulation. There appear to be no indicators of implied authority until the Paiges' objection to LMF's Motion to Extend the deadline to file a

complaint to determine dischargeability is taken into account. The original objection by the Paiges, filed on December 5, 2011, and the amended objection of December 22, 2011, as an alternative to sustaining their objection, assented to a one-month filing extension to January 6, 2012. Doc. #39 and #43. The Paiges testified that they expressly requested that this objection be made, thereby indicating that they approved of this alternative request for a month limit on the extension. This concession demonstrates procedural flexibility on the part of the Paiges. From this showing of flexibility, Attorney Spott could reasonably have inferred that the Paiges would have agreed to the stipulation. When the totality of the circumstances is weighed, there is simply not enough evidence to rebut the presumption of implied authority that generally attaches to procedural matters. Under these circumstances, the Paiges are bound by their attorney's agreement.

Regardless of the enforceability of the joint stipulation, the Court may use its discretion to enlarge the deadline to determine dischargeability in accordance with Rule 4007(c). *See* Fed. R. Bankr. P. 9006(b)(3). Under Federal Rule of Bankruptcy Procedure 4007(c), in a Chapter 7 liquidation case,

> [A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than sixty (60) days after the first date set for the meeting of creditors under § 341(a). . . . The court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c).

This procedural rule helps to facilitate one of the primary policy objectives of bankruptcy law: to give the debtor a "fresh start" in a timely manner. *See In re Pace*, 130 B.R. 338, 340 (Bankr. N.D.Fla. 1991).

Once a motion to extend the deadline is filed in a timely fashion, the court must decide whether there is "cause" to grant the motion. Rule 4007(c) does not explain what "cause" means, and leaves it to the discretion of the bankruptcy court to determine. *See In re Anthanassious*, 418 Fed. Appx. 91, 96 (3d Cir. 2011); see also *In re Farhid*, 171 B.R. 94 (N.D.Cal. 1994). While courts vary in their conceptions of what constitutes valid "cause," there is a consensus that "cause" will not be found where the extension request is due to a lack of diligence by the creditor, or when there are no special circumstances that would reasonably delay a creditor from examining the debtor and related materials within the allotted sixty (60) days. *See id.; see also In re Woods*, 260 B.R. 41, 44-45 (Bankr. N.D.Fla. 2001) (noting diligence is the majority view for showing cause); *In re Boltz-Rubinstein*, 454 B.R. 614, 622 (Bankr. E.D.Pa. 2011) (noting that diligence is very significant in determining cause, but a lack of diligence is not dispositive under certain circumstances).

In this instance, there is no dispute that LMF filed its Motion to Extend Time for Fililng a Complaint to Determine Dischargeability within the sixty (60) day deadline. The deadline was set for December 6, 2011, and LMF filed the Motion 5 days prior on December 1, 2011. There is a dispute as to whether LMF had alleged proper cause to receive an extension. However, under the totality of the circumstances, LMF's counsel's delay does not appear to have been due to a lack of diligence but, rather, from a lack of access to potentially important information. One purpose of the 341(a) meeting is to allow creditors to determine if they can properly object to the discharge of a debt, and a creditor may move to extend the deadline when (1) the 341(a) meeting is extended beyond the filing deadline; and (2) the debtor has not yet been completely examined. *See In re McDowell*, 57 B.R. 310, 312 (Bankr. M.D.Pa. 1986). Both factors are present in the

present instance. The original 341(a) meeting was scheduled for October 7, 2011, but was later rescheduled to November 4, 2011, and continued beyond the December 6, 2011 deadline for filing a complaint to dischargeability. Furthermore, the docket suggests that the Paiges did not complete their 341 meeting until January 6, 2012, which is one full month after the December 6, 2011 deadline. The Trustee, through counsel, observed that the Paiges provided an "extremely large amount of information" on multiple occasions that had not been reviewed due to lack of time as of the March 1, 2012 hearing on the request for extension of time. (Transcript of 3/1/2012 at 8 lines 14-22).

The Court finds that even if the stipulation extending the time to file a complaint is not upheld, independent grounds for such extension exists under Federal Rule of Bankruptcy Procedure 4007(c).

My Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: August 1, 2012