IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| | : | |
| CHRISTOPHER HOWARD PAIGE and | : | BANKRUPTCY NO.: 5-11-bk-05957-JJT |
| MICHELE ANNA PAIGE, | : | |
| | : | |
| DEBTORS | : | |
| | : | |
| LERNER MASTER FUND, LLC, | : | {**Nature of Proceeding**: Defendants' |
| | : | Motion to Dismiss and/or Strike LMF's |
| PLAINTIFF | : | Untimely Motions and Complaint |
| | : | (Doc. #4)} |
| vs. | : | |
| | : | |
| CHRISTOPHER HOWARD PAIGE and | : | |
| MICHELE ANNA PAIGE, | : | |
| | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5-12-ap-00067-JJT** |


# **OPINION**[1]


The Debtors, Michele and Christopher Paige, are confronted with an eight count

discharge/dischargeability Complaint filed by the Lerner Management Fund (LMF).  At the same

time, the Proof of Claim of LMF has been objected to by the Paiges.  The Paiges are pro se.

When appropriate to identify them individually, I shall refer to them by their first name.  They

have devoted a considerable amount of effort in filing responsive Motions to the LMF filings.

On August 15, 2012, argument occurred on all pending Motions.  This Opinion is dispositive of

those Motions.

It appears that each of the Paiges maintained control over related corporations and were

involved, in individually different capacities, in the maintenance of a hedge fund in which LMF

---

[1] Drafted with the assistance of Erick Sam, Judicial Extern.

[K:\Cathy\Opinions-Orders filed 2013\5-12-ap-00067-JJT_Paige_Motion#4_Final.pdf]

was the principal investor. Subsequently, LMF sued Michele Paige and obtained a judgment in the Delaware Court of Chancery. After the Paiges filed bankruptcy, this instant Complaint was filed. The Paiges have responded with a flurry of variously titled responses including pleadings filed at Docs. ##4, 20, 22, 24, 26, 28, 30, 32, and 43. Because many of the Paiges' arguments overlap, and, in order to expedite disposition, I will dispose of the Paiges' pleadings as a loosely phrased Motion to Dismiss under Rule 12.

*Preliminary Overview*

Christopher Paige first argues that the litigation by LMF against him in Delaware was dismissed with prejudice, and therefore, no further action against him can occur.

In his lengthy Memorandum Opinion, Chancellor Leo E. Strine, Jr. of the Delaware Court of Chancery stated the following regarding LMF's counterclaims against Christopher Paige:

> It is no doubt correct that Christopher Paige was . . . involved in his wife's decision to cause Paige General Partner to use the Gate Provision against the Lerner Fund. . . . It may be that he can be held responsible for aiding and abetting or on other grounds such as unjust enrichment, but none of those grounds has been pled here. . . . I dismiss the fiduciary duty count against Christopher Paige and Paige Capital Management *without prejudice, reserving to the Lerner Fund the right to bring an aiding or abetting or unjust enrichment claim in the event that Michele Paige and Paige General Partner do not satisfy the final judgment.*

Doc. #50-3, Exhibit A at 68-69 filed to Case Docket 5-11-bk-05957(emphasis added).

Christopher Paige's first two arguments attempt to show that the Chancellor's decision to dismiss LMF's claims without prejudice was unlawful under Delaware law. Initially, he argues that Rule 15(aaa) of the Delaware Court of Chancery Rules provides the grounds for this conclusion. Essentially, the rule asserts that if a defendant makes a motion to dismiss a plaintiff's complaint for failure to state a claim for which relief can be granted, and if the

plaintiff then chooses to file an answering brief in opposition to the motion rather than to amend

his pleadings accordingly, any subsequent dismissal of the plaintiff's claims pursuant to the

defendant's motion will be *with* prejudice unless the "dismissal with prejudice would not be just

under all the circumstances." *Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del.

2006)(providing this encapsulation of the rule).[2]

Christopher Paige contends that because he "filed a motion to dismiss [LMF's

counterclaims] which LMF chose to answer [rather than to amend its pleadings], the Chancery

Court's dismissal was a dismissal *with* prejudice as a matter of law under Del. Ch. Ct. 15(aaa)."

Pre-Hearing Brief in Support of Debtors' Evidentiary Objections to LMF's Proof of Claim

Against Christopher Paige, Doc. #112 at 7 filed to Case Docket 5-11-bk-05957. Further,

Christopher Paige argues that since a claim that has been dismissed with prejudice cannot be

relitigated, LMF's claims against him should be unenforceable as a matter of law.

Christopher Paige's argument conveniently overlooks the very last clause of Rule 15(aaa)

quoted above. The rule clearly states that if a "dismissal with prejudice would *not be just* under

all the circumstances," the court shall have the legal discretion to dismiss the claims in question

*without* prejudice.

In the present instance, Chancellor Strine articulated a very clear reason why a dismissal

---

[2] Rule 15(aaa) in its entirety asserts:

    Notwithstanding subsection (a) of this Rule a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1, by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances. Rules 41(a), 23(e), and 23.1 shall be construed so as to give effect to this subsection (aaa).

with prejudice would have been unfair.  In a letter dated August 24, 2011, the Chancellor

explains that since Christopher Paige raised certain arguments at a very late stage in the trial,

LMF did not have a fair opportunity to litigate a number of potentially fruitful claims against

Christopher Paige.[3]  Rather than allow for full litigation of these theories, the court dismissed

LMF's claims due to the lack of economic or practical utility in imposing liability on

Christopher Paige if Michele Paige or the fund were able to fully satisfy the judgment.  The court

was acting wholly within the discretion accorded to it under Rule 15(aaa) in dismissing without

prejudice.

Christopher Paige's second argument challenges the legality of dismissing a claim

without prejudice after a trial has already been completed.  It is "undisputed and indisputable,"

he contends "that Delaware law does not permit dismissals without prejudice *after* trial. . . . LMF

does not even attempt to explain how or why Chancellor Strine could reverse and/or modify

these authorities . . . ."  Reply Brief in Support of Debtor's Objection to LMF's Proof of Claim

Against Christopher Paige, Doc. #104 at 4 filed to Case Docket 5-11-bk-05957.  Christopher

Paige then cites several cases that purportedly stand for this proposition.  *Id.*

---

[3]  Chancellor Strine's entire letter from August 24, 2011 reads:
        The Lerner Fund's form of final judgment order is appropriate.  In the opinion, I was
restrained in my treatment of Christopher Paige.  As the Lerner Fund points out, the factual
findings in my decision could reasonably support liability on other theories.  Because Mr. Paige
raised certain arguments very late, the Lerner Fund had no fair opportunity to raise those theories.
The dismissal without prejudice took that into account.  Moreover, I was being restrained because
if there is no economic need to impose liability on Mr. Paige because other defendants satisfy the
judgment, there is no practical utility to doing so now.  But for Mr. Paige to attempt to obtain a
dismissal with prejudice is to reargue my decision.  I stand by that decision and if I were to change
it, it would be allow the Lerner Fund to amend and add new accounts and to ask me to find that the
factual findings in the opinion satisfy those new theories and justify the imposition of monetary
damages against Christopher Paige.
        I will, however, continue to be restrained and sign the Lerner Fund's proposed order.  It
shall submit an order with the numbers filled in, which I shall enter tomorrow.
Doc. #50-5, Exhibit C filed to Case Docket 5-11-bk-05957.

Unfortunately Christopher Paige's characterization of his authorities is overly broad and somewhat misleading. The cases cited by Christopher Paige hold that if a plaintiff *voluntarily withdraws* his claims after inducing the defendant to spend a substantial amount of time and resources litigating or preparing to litigate the issues, the court will, out of fairness to the defendant, be obliged to dismiss the plaintiff's claims with prejudice.[4]

The present case deviates from this paradigm in two crucial respects. First, LMF never voluntarily withdrew its claims of unjust enrichment and aiding/abetting against Christopher Paige. Second, LMF apparently never even had a fair chance to litigate these claims in the first place. Chancellor Strine's judgment is not contradicted by the cited authorities.

Christopher Paige next argues that even if a dismissal without prejudice was legally permissible, LMF will still be barred from amending its pleadings in the original Delaware lawsuit to include charges of unjust enrichment and aiding and abetting a breach of fiduciary duty. In *Braddock v. Zimmerman,* the Supreme Court of Delaware held that a dismissal without prejudice serves as a final judgment and "is not to be construed as an implicit invitation to file an amended complaint," unless "the plaintiff is expressly granted leave to amend within a certain time." *Braddock v. Zimmerman,* 906 A.2d 776, 783-84 (Del 2006). However, the otherwise final judgment "does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action." *Id.* at 784.

In his Opinion, Chancellor Strine dismissed "the fiduciary duty count against Christopher Paige and Paige Capital Management without prejudice, reserving to the Lerner Fund the right to

---

[4] *Draper v. Gardner Defined Trust Plan*, 625 A.2d 859, 864 (Del. 1993); *In re Marriott Hotel Props. II Ltd. Pshp. Unitholders Litig.,* 1997 WL 589028, 6-7 (Del. Ch. 1997); ASX Inv. Corp. v Newton, 1994 WL 240697,1-3 (Del. Ch. 1994).

bring an aiding or abetting or unjust enrichment claim *in the event that* Michele Paige and Paige General Partner do not satisfy the final judgment." Doc. #50-3, Exhibit A at 69 filed to Case Docket 5-11-bk-05957.

The interpretive issue here is, therefore, whether a right to amend made contingent upon the occurrence of some future event (i.e., Michele Paige not satisfying the final judgment) qualifies as an express grant of leave to amend "within a certain time."

However, the issue need not even be settled for our present purposes. Because a dismissal without prejudice clearly does not serve as a *res judicata* bar, (*Braddock v. Zimmerman,* 906 A.2d at 784), *Braddock* does nothing to prevent LMF from simply initiating a *new* lawsuit against Christopher Paige in order to litigate its claims of unjust enrichment and aiding/abetting.

The case is regrettably colored by one additional factual dimension. During the course of the discovery phase of the Delaware litigation, a number of LMF's internal email conversations referring to the Paiges in sexually derogatory language was uncovered. While crass and insulting, the Court of Chancery found that the conversations were a mere byproduct of LMF's frustration with Michele Paige's perceived lack of business acumen and professionalism. They were not indicative of any intent or attempt to harass or discriminate. Doc. #50-3, Exhibit A at 14-15 filed to Case Docket 5-11-bk-05957.

In October 2011, LMF made a court-approved request that the Paiges destroy their copies of the embarrassing internal emails. The Paiges proceeded to destroy not only the requested emails, but also a number of their own personal financial records, including records detailing the transfer of funds between corporate and personal bank accounts. Christopher Paige explains that

it would have been logistically infeasible given the unwieldy amount of discovered materials to have located and destroyed just the requested email conversations. Christopher Paige further contends that some of LMF's attorneys at the time consented to co-destruction of these other materials. Doc. #104 at 12 filed to Case Docket 5-11-bk-05957. Mr. Goodchild, current attorney to LMF, denies that LMF gave the Paiges any such consent.

Christopher Paige argues that in requesting the destruction of the embarrassing internal emails, LMF breached its duty to preserve evidence in anticipation of future litigation. This argument fails for two reasons.

First, there is no indication that LMF destroyed its *own* internal or electronic copies of the emails in question. Presumably then, the material is not irretrievably lost and could theoretically be recovered by the Paiges during any future litigation.

Second, in the very case cited by Christopher Paige to define the scope of LMF's preservative obligation, the court holds that a party only has the duty to preserve evidence it *should reasonably expect to be relevant* to anticipated future litigation.[5] Because Christopher Paige fails to persuade us how LMF's internal emails could possibly factor into a valid defense to allegations of unjust enrichment and aiding/abetting, we find that LMF did not breach this obligation.

---

[5] There the court held that:
A party in litigation or who has reason to anticipate litigation has an affirmative duty to preserve evidence that *might be relevant* to the issues in the lawsuit. Often this duty attaches even before litigation has been commenced 'when a party should have known that the evidence may be relevant to future litigation.' A party *does not, however, have a duty to 'preserve every shred of paper, every e-mail or electronic document*,' but instead must preserve what it knows, *or reasonably should know, is relevant to the action*, is reasonably calculated to lead to discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending request.
Doc. #104 at 11 filed to Case Docket 5-11-bk-05957 (quoting *TR Investors, LLC v. Genger*, 2009 Del. Ch LEXIS 203 (Del. Ch. 2009)(emphasis mine).

Even *if* LMF's behavior were wholly animated by sexist propensities (although Chancellor Strine's opinion discounts any such possibility), the emails would *still* be totally irrelevant to LMF's claims of unjust enrichment and aiding/abetting breach of fiduciary duty. There is simply no law prohibiting an entity from acting wholly within his contractual rights but for the wrong reasons. The Delaware Court found that LMF had every right to demand return of its 40 million dollar investment. Therefore, its subjective motivation for the request is irrelevant. Nor can the emails be regarded as any form of outward harassment, since the Paiges were not even aware of their existence until the discovery phase of the Delaware lawsuit. This analysis is strongly corroborated by the Court of Chancery's analysis of the case.

The Paiges next contend that by (a) requesting that the Paiges destroy LMF's internal emails and (b) failing to revive its claims against Christopher Paige for several months after his bankruptcy filing, LMF was (1) representing an end to all present litigation and (2) abdicating its right to engage in future litigation. Doc. #104 at 16-18 filed to Case Docket 5-11-bk-05957. In reasonable reliance upon these representations, the Paiges destroyed personal records that may have been important to future litigation. Since they suffered a prejudicial change in position at LMF's inducement, the Paiges conclude that LMF should be equitably estopped from asserting claims against them related to the destroyed documents.

Because there is a factual dispute as to whether LMF's attorneys gave the Paiges consent to destroy a number of their own personal records, we are obligated to view the facts in a light most favorable to LMF for the purposes of determining whether LMF's claims against Christopher Paige fail as a matter of law. Evaluated from this perspective, we find that the Paiges' inference that LMF was waiving its right to initiate future litigation, and the resulting

decision to destroy their personal records, may not have been justified.

*Counts of the Complaint*

Addressing the Complaint in more specific terms, Counts I and III of the LMF Complaint allege that Michele (Count I) and Christopher (Count III) are indebted to LMF by reason of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" under 11 U.S.C. § 523(a)(4). Apart from broadly alleging that Michele Paige breached her fiduciary responsibilities to LMF, Plaintiff alleges that Michele Paige committed defalcation generally by her use (or abuse) of certain contractual provisions between the parties. Christopher Paige is said to be as liable because he assisted his spouse in this endeavor, presumably in his capacity as counsel.

Defalcation is defined in Black's Law Dictionary as "1. EMBEZZLEMENT. 2. Loosely, the failure to meet an obligation; a nonfraudulent default. 3. *Archaic*. A deduction; a setoff." Black's (9th ed. 2009). This tension between the first definition, which requires scienter, and second, where scienter is likely not a factor, has found a parallel disagreement among the various circuit courts that have analyzed the appropriate application of the term "defalcation" as used in the context of § 523(a)(4)[6]. See the excellent discussion found in Judge Frank's Opinion in *In re*

---

[6]
      The Fourth, Eight and Ninth Circuits follow the "innocent mistake" line of cases. See *In re Uwimana*, 274 F.3d 806 (4th Cir.2001); *In re Cochrane*, 124 F.3d 978 (8th Cir. 1997); *In re Lewis*, 97 F.3d 1182 (9th Cir. 1996).

      In the Tenth Circuit, defalcation under § 523(a)(4) appears to require that the debtor act negligently. See *In re Storie*, 216 B.R. 283 (10th Cir. BAP 1997).

      The First, Second, Fifth, Sixth and Seventh Circuits require either reckless or extreme reckless conduct before defalcation by a fiduciary gives rise to a nondischargeable claim. See *In re Patel*, 565 F.3d 963 (6th Cir. 2009); *In re Hyman*, 502 F.3d 61 (2d Cir. 2007), *cert. denied*, ─── U.S. ───, 129 S.Ct. 895, 173 L.Ed.2d 106 (2009); *In re Baylis*, 313 F.3d 9 (1st Cir. 2002); *In re Schwager*, 121 F.3d 177 (5th Cir. 1997); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994).

      In this Circuit, the Court of Appeals has not addressed the issue, . . . .
*In re Tyson*, 450 B.R. 514, 525 (Bkrtcy. E.D.Pa. 2011)

*Tyson*, 450 B.R. 514, 525 (Bkrtcy. E.D.Pa. 2011). Our Third Circuit Court of Appeals has yet to weigh in on the circuit split, although two unpublished opinions have broached the topic tangentially. *In re Leonelli-Spina*, 426 Fed.Appx 122, 2011 WL 1667369 (3rd Cir. 2011), *In re Schlessinger*, 208 Fed.Appx. 131, 2006 WL 3707875 (3rd Cir. 2006). LMF has incorporated the Delaware Court of Chancery Opinion in its Complaint which certainly alerts the Paiges of the nature of the claim against them. The basis of the argument against Michele Paige is relatively apparent inasmuch as judgment has been entered against her by virtue of the Chancery decision. I am satisfied that the Delaware judgment can support the allegations against Michele Paige at this juncture, such that the Count should be answered.[7] Not so with Christopher Paige since he was dismissed as a party by the Delaware Court. In fact, the Court of Chancery specifically found that Christopher Paige was *not* a "direct fiduciary." Opinion, Doc. #50-3, Exhibit A at 68 filed to Case Docket 5-11-bk-05957. The Delaware Court speculated that Christopher Paige may suffer some liability for aiding Michele Paige, but at best this was dicta, because Christopher Paige was dismissed as a party and references to his exposure appear not to be a factor in the ultimate judgment. Since Christopher Paige acted as counsel to either Michele Paige, the corporations, or both, his actions during such activities demands extreme scrutiny. By the same token, Christopher Paige deserves to be noticed of the specific allegations which are said to subject him to liability under this Count. Those allegations are lacking in this Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). A review of the LMF Complaint regarding Count III fails to articulate in what manner Christopher Paige was a

_____

[7] The parties are advised that pending before the United States Supreme Court is the pivotal issue of how "defalcation" should be defined for purposes of § 523(a)(4). *Bullock v. BankChampaign, N.A*, cert. granted. 133 S.Ct. 526 (Mem), U.S.,2012. *Bullock v. BankChampaign, N.A. (In re Bullock)*, 670 F.3d 1160 (11th Cir. 2012).

fiduciary for LMF, and so, the Motion to Dismiss must be granted as to this Count.

I next address Counts II and IV of the Complaint alleging willful and malicious injury under 11 U.S.C. § 523(a)(6) by Michele (Count II) and Christopher (Count IV). The Delaware Opinion made clear that there was a breach of not only a fiduciary obligation on behalf of Michele Paige, but of a "professional" responsibility. It is for that reason that I look to *In re Conte*, 33 F.3d 303 (3rd Cir. 1994) for guidance since that case focused on the question of whether malpractice by a lawyer could amount to a willful and malicious injury under § 523(a)(6). Succinctly speaking, the holding was that "the Bankruptcy Code requires at least a deliberate action that is substantially certain to produce harm." *Id.* at 309. To the extent that LMF has incorporated the essential factual findings of the Delaware Court of Chancery, perhaps such an argument could be advanced against Michele Paige inasmuch as judgment was entered against her. That analysis would not apply to Christopher Paige since the Complaint against him was dismissed. I am left, then, to examine into the allegations of this Complaint to determine LMF's theory of liability against Christopher Paige, and that analysis falls short since liability is based simply on the conclusory statement that Christopher Paige implemented some contractual provision to the detriment of LMF. Nevertheless, as indicated, no economic liability has attached to Christopher Paige by reason of this activity, and the Count against him was dismissed without prejudice.

Christopher Paige deserves to know what specific activities, that he supposedly engaged in, serve as grounds for liability under this Count. His Motion to Dismiss will be granted.

I turn to Count V against Christopher and Michele Paige. This Count objects to the discharge under 11 U.S.C. § 727(a)(2)(A) alleging that, within one year of filing the bankruptcy,

the Paiges hindered their creditors by transferring assets out of their names and into their corporate entities. The seminal case of *Bell Atlantic Corp. v. Twombly* requires some factual allegations, rising above the speculative level, supporting the cause of action. I am satisfied that the allegation of money transfers into related corporations do just that, and thus, this Count survives the Paiges' Motion to Dismiss.

Count VI alleges the Paiges should not get a discharge because they violated 11 U.S.C. § 727(a)(3) by failing " . . . to keep or preserve . . ." books, etc., from which their financial condition or business transactions might be ascertained. Allegation of record destruction is found in paragraph 27 of the Complaint. That paragraph suggests the Paiges destroyed "original copies"[8] of corporate ledgers and financial records relevant to their financial dealings. Such an allegation is sufficient to survive a Rule 12(b) examination.

Count VII alludes to a violation of 11 U.S.C. § 727(a)(4) alleging the Paiges "knowingly and fraudulently gave, offered, and received money, to and from their personal bank accounts and the Paige corporate entities' checking accounts, POP, POMF, and/or PCM,[9] for acting or forbearing to act, in violation of 11 U.S.C. § 727(a)(4)(C)." The statute requires that this activity occur "in or in connection with the case." Simply stated, it is in the nature of extortion or bribery. The four corners of the Complaint do not support the allegation and the Count will be dismissed.

The last Count, Count VIII, alleges the Paiges were unable to explain their loss or deficiency of assets at the § 341 meeting conducted by the Trustee. The allegation appears

---

[8] I assume the reference is to the original document and not a copy.

[9] Paige Opportunity Partners, L.P.; Paige Opportunity Master Fund, Ltd.; Paige GP, LLC, respectively.

specific enough to survive a Rule 12(b) challenge since it specifies the occasion of occurrence.

The Paiges also seek dismissal of the LMF proof of claim. Doc. #112 at 17-28 filed to Case Docket 5-11-bk-05957. Because I have decided to defer disposition of the objection to the claim until such time as the discharge/dischargeability issues are adjudicated, this issue will be deferred.

In summary, Paiges' Motion to Dismiss Counts III, IV, and VII is granted, and LMF has twenty-one (21) days to amend the pleadings. The Paiges shall answer the Complaint or its amendment within forty-two (42) days. The Paiges' Motion to Dismiss the remaining Counts is denied for the reasons indicated.

My Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge

(CMS)

Date: April 1, 2013