IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| CHRISTOPHER HOWARD PAIGE and MICHELE ANNA PAIGE, | : | BANKRUPTCY NO.: 5-11-bk-05957-JJT |
| DEBTORS | : | |
| LERNER MASTER FUND, LLC, | : | {**Nature of Proceeding**: Debtors-Defendants' Motion for Judgment pursuant to Fed. R. Bankr. P 7052 |
| PLAINTIFF | : | |
| vs. | : | |
| CHRISTOPHER HOWARD PAIGE and MICHELE ANNA PAIGE, | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5-12-ap-00067-JJT** |

# OPINION

Lerner Master Fund, LLC, (hereinafter "LMF"), has filed a multi-count Amended Complaint, (Doc. #81), against the joint Debtors, Christopher and Michele Paige, (hereinafter "Debtors"). The seven Count Complaint advances the following causes of action:

Count I: § 523(a)(4) Dischargeability exception against Michele Paige;

Count II: § 523(a)(6) Dischargeability exception against Michele Paige;

Count III: § 523(a)(4) Dischargeability exception against Christopher Paige;

Count IV: § 523(a)(6) Dischargeability exception against Christopher Paige;

Count V: § 727(a)(2)(A) Objection to Discharge of All Debts of Christopher and Michele Paige;

Count VI: § 727(a)(3) Objection to Discharge of All Debts of Christopher and Michele Paige;

Count VII: § 727(a)(5) Objection to Discharge of All Debts of Christopher and Michele Paige.

After ten days of trial, LMF has rested. The Debtors have countered with a Motion under Rule 52 seeking judgment in their favor on partial findings. In advancing its case, LMF has called both Debtors and the female Debtor's sister as their only witnesses. It has also relied on findings made by the Court of Chancery of Delaware in holding Michele Paige liable for a breach of fiduciary responsibility.[1] LMF also introduced a number of documents in support of its Complaint.

Federal Rule of Civil Procedure 52 is made applicable to bankruptcy adversaries by the provisions of Federal Rule of Bankruptcy Procedure 7052. Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue . . . .

This Court will initially focus its attention on Counts V, VI, and VII. Those Counts allege that discharge should be denied under 11 U.S.C. § 727(a)(2)(A), (3), and (5). The applicable Sections read as follows:

**§ 727. Discharge**

**(a)** The court shall grant the debtor a discharge, unless–
. . .
    **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

---

[1] *Paige Capital Management, LLC, et al v. Lerner Master Fund, LLC, et al v. Paige Capital Management, LLC, et al.* 2011 WL 3505355.

        **(A)** property of the debtor, within one year before the date of the filing of the petition;

. . .

    **(3)** the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

. . .

    **(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

The discharge is central to Chapter 7 bankruptcy relief. As such it should be construed liberally in favor of the debtor. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993). Section 727(a)(2) requires that there be a transfer, concealment, etc., with intent to hinder, delay, or defraud creditors or the trustee. Section 727(a)(3) requires that there be a failure to maintain adequate records and that failure makes it impossible to ascertain debtor's financial condition or business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1233 (3rd Cir. 1992). Section 727(a)(5) requires there be a failure by the debtor to satisfactorily explain a loss or insufficiency of assets to meet liabilities.

The operative facts of this complex relationship between the parties are known to the parties and will only be summarized in a cursory fashion for the benefit of the readers. Findings of fact pivotal to the outcome will be identified.

Both Debtors are highly educated individuals. Michele Paige has secured an undergraduate degree from Brown University where she graduated *magna cum laude*, a post graduate Masters degree from Harvard, and a law degree from Yale. Tr. #287 at 38-39. She was also an instructor at both Yale Law School and Yale School of Management. Tr. #274 at 153

and Tr. #287 at 41. In addition, she has clerked for a Federal Circuit Judge. Tr. #250 at 16. Christopher Paige has earned an undergraduate degree from the University of Virginia, a Masters degree from New York University, and a law degree from Yale. Tr. #261 at 7 and Tr. #287 at 44. Michele's unique talents allowed her a certain success as a hedge fund manager which provided the opportunity to establish her own hedge fund entities.[2] The support of a principal investor was essential, and she managed to secure a $40 million investment from LMF. This investment was received pursuant to various contracts negotiated by LMF and Michelle Paige through her outside counsel. Tr. #260 at 85. The Debtors invested much of their own funds into the effort and Michele's parents invested all of their savings. Tr. #250 at 43. Her husband, Christopher, worked for one or more of Michele's entities in various capacities including general counsel, chief operating officer, bookkeeper, analyst, compliance officer, etc. Codebtor Michele was the only one who could make investment decisions. Tr. #261 at 58. She controlled the various entities. Tr. #287 at 49. The management fee payable to PCM was 1.5% per year or approximately $600,000 annually. Tr. #261 at 89. This payment was in addition to incentive fees that could be earned by PCM. In 2008, that fee amounted to $120,000. Tr. #261 at 93. In 2010, the fee was $27,000. Tr. #261 at 95. Michele also had an entitlement to a $1.15 million annual salary from PCM. Tr. #272 at 83, 98, and 198.

The relationship between Michele and LMF eventually soured, with LMF expressing a desire to withdraw from the fund. The parties appear to agree that withdrawal was not possible

---

[2] Michele Paige was the principal in a number of related entities mentioned at trial, including Paige Opportunity Master Fund, Ltd. (POMF), Paige Opportunity International (POI), both offshore funds, Paige Opportunity Partners (POP), an onshore fund, Paige Capital Management, LLC, (PCM) and Paige GP, LLC (PGP). PGP was the general partner for the offshore and onshore funds. LMF Trial Ex. #93 and Tr. #287 at 46.

until the conclusion of a three year "lock-up" contract provision expired. After that three year period, a "gate" provision in the governing instruments ostensibly limited LMF's annual withdrawal to 20% per year. A contest over the applicability of that provision spilled over into the Delaware Chancery Court which found that enforcing the gate provision was a breach of fiduciary responsibility on behalf of Michele.[3] Judgment against Michele and some of her entities was entered in the amount of $6,568,400.[4] Thereafter, on August 29, 2011, the Debtors filed for Chapter 7 relief seeking a discharge of their obligations. During the pendency of this bankruptcy, LMF filed a Complaint objecting to discharge as well as the dischargeability of its specific claim.

While the Debtors were initially represented by counsel, their relationship with counsel deteriorated, and, on February 13, 2012, they dismissed their lawyer and elected to proceed *pro se*. Doc. #70. Although without any bankruptcy law experience, they have resolutely been proactive in this case utilizing their innate intelligence as well as their legal acumen in defending the Complaint. Their defense has included multiple and repetitive pleadings and objections presumably advanced to prevent any possible "waiver" of their rights to appellate review should the outcome be less than favorable to them. The trial was marked by a constant stream of interruptions by Michele Paige, some of which were legitimate objections, but most appeared to emanate from a desire to supplement the witness's testimony at inappropriate times. The Debtors exercised every opportunity to inject sarcasm into their comments, clearly venting their

---

[3] *Paige Capital Management, LLC, et al v. Lerner Master Fund, LLC, et al v. Paige Capital Management, LLC, et al.* 2011 WL 3505355.

[4] Order of Aug. 25, 2011 filed to C.A. No. 5502-CS.

conclusion that the proceeding was a vindictive assault on their integrity. While the Debtors were manifestly indignant, I cannot find that they acted with an intent to be vexatious. Nevertheless, the trial stands as a testament to the deficiencies of representing oneself.

LMF's case consisted solely of certain findings made by the Delaware Chancery Court in connection with the judgment issued August 25, 2011, the testimony of the Debtors, Christopher and Michele Paige, and the testimony of Michele's sister, Jessica Paige. Completing its case was the admission of various exhibits, including Debtors' response to certain interrogatories. See Exhibit B to Doc. #275.

I have heretofore concluded that Michele is collaterally estopped from challenging certain findings of the Delaware Chancery Court. Doc. #16. My conclusions were made in response to a Bankruptcy Rule 7016 Motion filed by LMF and can be found at transcript found at Doc. #66. At the time of the hearing, I emphasized that the Delaware Court's reference to "the Paiges" was subject to further dispute between the parties since the Delaware Court was sometimes inconsistent in its use. Doc. #66 at 57.

The Plaintiff, LMF, has the burden of proof.

> In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659, 661, 112 L.Ed.2d 755 (1991), the United States Supreme Court held that a preponderance of the evidence was the applicable standard of proof which must be met to prevail in an action brought under Section 523(a) of the code. Other courts have determined that this same standard should be applicable to a plaintiff in an action filed under Section 727. See *In re Serafini*, 938 F.2d 1156 (10th Cir.1991); *In re Henderson*, 134 B.R. 147 (Bankr.E.D.Pa.1991); *In re Goldstein*, 123 B.R. 514, 522 n. 15 (Bankr.E.D.Pa.1991). We agree. The *Henderson* Court*, supra*, discusses this burden of proof and cites the following from the case of *Burch v. Reading* Co., 240 F.2d 574, 579 (3rd Cir.), *cert. denied*, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957):the plaintiff's burden is to convince [the fact-finder] upon all the evidence before [it] that the facts asserted by the plaintiff are more probably true than false ... [the fact-finder] must at least be convinced that the evidence

> considered as a whole, its 'preponderance' to use the traditional term, indicates
> that the facts asserted by the plaintiff are probably true.

*In re Kisberg*, 150 B.R. 354, 356 (Bankr. M.D. Pa. 1992).

In Count V, LMF makes the very specific allegation under § 727(a)(2)(A) that, within one year of bankruptcy, the Debtors transferred funds from their personal accounts to the corporate entities with the intent to hinder, delay, and defraud creditors and/or the Trustee in bankruptcy. Doc. #81, ¶¶ 50-52.

During the operation of the hedge funds, the Debtors had one personal account that they maintained jointly at Bank of America. Tr. #260 at 96-97. The testimony was that if personal funds went into one of the Debtors' corporations, and was transferred from their personal funds, the source may have come from Michele's parents, a gift, or Michele's 401(k) account. Tr. 260 at 99-100. Inquiry into the timing of these transfers was rather vague but presumably occurred between the inception of the hedge fund operation and the Debtors' bankruptcy, a period from October 31, 2007 to August 29, 2011. Tr. #260 at 104. Christopher Paige further testified that both business and personal expenses were paid from a corporate account and then reconciled at the end of the year with the help of their tax professionals. Tr. #272 at 155-156. Transfers from one account to another were preceded by memorandums delivered to the prime broker and copied to the administrator.[5] Tr. #274 at 18.

I am uncertain as to what funds were transferred to the Debtors during the year before their bankruptcy. The records have not been that specific. The Debtors, in their testimony,

---

[5] Christopher Paige described the third party administrator as SS&C Technologies, the entity that would independently review all trades. Tr. #274 at pp 95-99.

certainly did not acknowledge making any attempt to defraud creditors by moving assets. LMF's suggestion in its pretrial submission is that I seek "badges of fraud," but I simply came up empty.

In considering the disposition of the current Rule 52 Motion, witness credibility is a significant factor. *EBC, Inc. v. Clark Bldg. Systems, Inc*., 618 F.3d 253, 272–73 (3rd Cir. 2010). The Debtors' lengthy testimony was certainly colored by an anticipated defensiveness, a tendency to ramble, and an obvious antipathy toward LMF. Notwithstanding those shortcomings, their testimony was consistent, plausible, and generally corroborated by extrinsic evidence. The $6,568,400 judgment entered against Michele Paige was also entered against PCM, PGP, the "Onshore Fund" and the "Offshore Fund." Doc. #50. Transfers from the Debtors' personal accounts to any one of these entities would hardly be motivated by a fraudulent intent since they were all liable to LMF. Such transfers would certainly not be motivated by an intent to spirit funds away from access by LMF. It should be noted also that no specific asset or fund has been identified as being hidden from their creditors. It would be a mistake to assume that Michele Paige shorted LMF of over $6.5 million from LMF's initial $40 million investment. The judgment indicated that, on the day of LMF's right of redemption, the sum of $39,505,175 existed in the Debtors' capital accounts. Of that sum, $7,901,035 was returned to LMF on November 30, 2010 and $6,326,328 was returned to LMF on June 1, 2011. On the day before the Delaware judgment, the market value of the capital account stood at $21,461,166. Presumably, this was returned to LMF pursuant to the Delaware judgment. Thus, available for return to LMF was $35,688,529. This is $3,816,646 less than existed on the day of redemption. The larger judgment was computed by adding interest accumulation and legal fees

and expenses paid prior to October 31, 2010.

In order to survive the Rule 52 Motion, I must find that the Debtors transferred assets from their personal estate within one year of bankruptcy and did so with intent to hinder, delay, or defraud their creditors. 11 U.S.C. § 727a)(2)(A). Transfers discussed on the record detailed expenses incurred for medical and/or personal reasons. Such spending can technically qualify as "transfers" under § 727. *In re Pearson*, 2015 WL 801505 (Bktcy. D.Utah February 19, 2015), affirmed *Rupp v. Pearson*, — F.Supp.3d —, 2015 WL 9305674 (Dist. D.Utah December 21, 2015). I would still have to find that LMF established that these transfers were done with subjective intent to hinder, delay, or defraud their creditors. To find this intent, courts have examined badges of fraud including:

> 1) a close relationship between the transferor and the transferee; 2) that the transfer was in anticipation of a pending suit; 3) that the transferor Debtor was insolvent or in poor financial condition at the time; 4) that all or substantially all of the Debtor's property was transferred; 5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and 6) that the Debtor received inadequate consideration for the transfer.

*In re von Kiel*, 550 Fed.Appx. 105 (3rd Cir. 2013)(unpublished opinion) quoting from *In re Woodfield*, 978 F.2d 516, 518 (9th Cir. 1992)

There were withdrawals culled from the Debtors' personal account admitted at trial. Those withdrawals in the form of check disbursements amounted to between $250,000 and $300,000 for the one year prior to bankruptcy. Exhibit #62. Nevertheless, at the salary level of Michele, together with the unidentified income level of Christopher, expenses of that nature are hardly notable. LMF, in filings after the Rule 52 Motion, has suggested I reverse-pierce the corporations and/or consider the Paige corporations as alter egos of the Debtors. This would

allow me to consider corporate transfers as transfers from the Debtors. There was testimony that personal bills were paid from corporate accounts for the reason proffered that the accountant would straighten it out at tax time as to whether those withdrawals represented salary, capital withdrawals, or loans. While this, no doubt is sloppy bookkeeping, I decline to do a reverse-pierce on this limited evidence, as such a destruction of business identities should be preceded by due process protections afforded by allegations in a complaint and identification of and service on the various entities that might be affected. As it stands, the record is devoid of any evidence that the Debtors acted in such a manner for me to conclude that their discharge should be lost under § 727(a)(2) and, therefore, I find that LMF cannot succeed on Count V.

I will move to consideration of LMF's claim under § 727(a)(3), heretofore identified as Count VI. As set forth in *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3rd Cir. 1992), "in order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." In this case, both Debtors testified that much of their personal and business records were in possession of lawyers in conjunction with the Delaware case heretofore referenced. Testimony was offered that after the Delaware litigation, LMF, through its counsel, asked that confidential records delivered to the Debtors' counsel be destroyed pursuant to a Delaware Court Order. Tr. #261 at 177 and LMF Trial Ex. #60. They testified that because the amount of the materials was massive, the Debtors' Delaware lawyers[6] wanted $75,000 to

---

[6] In the Delaware Chancery Court, the Debtors were represented by lawyers from Delaware and from New York. For convenience, they will simply be referred to as "Delaware" counsel.

separate those materials covered by the Court Order from those that were not. Tr. #261 at 181 and Tr. #274 at 46. The Debtors elected not to pay for that effort because they had no assets to fund the effort. Christopher Paige emphatically denied destroying any records. Tr. #274 at 89. This testimony was not challenged. Curiously, this conversation occurred after the filing of the Chapter 7 bankruptcy, suggesting that the decision to retain or destroy records was not for the Debtors to decide, but for the Chapter 7 trustee. The Debtors' Delaware lawyer knew of the bankruptcy because the bankruptcy lawyer filing the case was paid by the Delaware lawyer discussing these options with the Debtors. Tr. #261 at 181. The Debtors testified that they did retain some records and made those records available to the Chapter 7 trustee. Presumably, LMF argues that the Debtors have failed to preserve records, but there is no evidence that the Debtors took any affirmative action to cause the records not to be available to LMF or the Chapter 7 trustee.

Turning to the second requirement that the lack of records makes it "impossible" to ascertain Debtors' financial condition and material business transactions, I observe there was no testimony to that effect. The Chapter 7 trustee did not testify and neither did any individual who had access to the records. No testimony was offered by the outside auditor charged with reviewing records of the hedge funds. No testimony was offered by the document storage company to whom all corporate records were delivered during the Delaware litigation. No testimony was offered by LMF to whom access was granted during the Delaware litigation. LMF simply has not met its burden in this regard and must fail on this Count.

Directing the parties' attention to Count VII which alleges that the Debtors have failed to explain satisfactorily a loss of assets or a deficiency of assets to meet their liabilities, I assume

[K:\Cathy\Opinions-Orders filed 2016\5-12-ap-00067-JJT_LMF_v_Paige_Rule_52.pdf]    11

Case 5:12-ap-00067-JJT    Doc 303    Filed 03/11/16    Entered 03/11/16 12:15:22    Desc
Main Document    Page 11 of 16

that the "asset" in question was the difference in the $40 million deposited by LMF in the hedge funds and the funds that were returned to LMF pursuant to the Delaware judgment. See Delaware Opinion. Despite the fact that the Debtors were on the stand for a combined ten days, I do not believe the question was ever specifically asked of them. Testimony was advanced that the monies in Michele's hedge fund corporations were directed either to the "tenant as a security deposit"[7] or delivered to the Plaintiff, LMF. Tr. #261 at 166. Copies of bank records for the Debtors' personal account were delivered to the Trustee in bankruptcy. Tr. #261 at 169. Corporate records, at the suggestion of Delaware counsel, were delivered to a document storage company, referred to in testimony as "Rhino," for use during the Delaware litigation. Full access was provided to LMF. Tr. #261 at 170. The Debtors retained no copies because access to the database was also available to the Debtors. *Id.* at 172.

     LMF fails to offer sufficient evidence to prevail on this Count. The Debtors are, therefore, entitled to their general discharge subject, however, to the disposition of the remaining Counts of this Complaint.

     I turn my attention to those Counts objecting to the dischargeability of the debt against the Debtors. Counts I through IV allege that under § 523(a)(4) and (6), both Debtors should not be discharged for their alleged obligations to LMF. While the general liability of Michele Paige to LMF has been adjudicated by the Delaware Court, Christopher's liability has not been adjudicated. The theory advanced by LMF to hold Christopher liable is unique inasmuch as it rests on an allegation of "aiding and abetting" to commit a breach of fiduciary duty apparently

---

[7] Presumably referring to a payment on a sublease for their corporate office in Manhattan.

recognized by the Delaware Court of Chancery in *Weinberger v. Rio Grande Indus., Inc.*, Del.Ch., 519 A.2d 116, 131 (1986). The allegation as to grounds under § 523(a)(4) against both Debtors (Counts I and III) has taken an interesting turn. That Section reads: "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

When the original Complaint was filed in 2012, the courts were split as to the degree of culpability implicit in the term "defalcation." To some courts, a simple breach of fiduciary responsibility was sufficient. *In re Sherman*, 658 F.3d 1009, 1017 (9th Cir. 2011), *In re Uwimana*, 274 F.3d 806, 811 (4th Cir. 2001). Other courts concluded that there be a degree of scienter or recklessness present before one would lose the ability to discharge the debt. *In re Bullock* 670 F.3d 1160, 1162 (11th Cir. 2012), *In re Baylis*, 313 F.3d 9, 20 (1st Cir. 2002). In May of 2013, that issue was resolved when the United States Supreme Court decided *Bullock v. BankChampaign, N.A.*, — U.S. —, 133 S.Ct. 1754, 1757, 185 L.Ed.2d 922 (2013). The Supreme Court concluded that in order for a fiduciary to lose his or her right to discharge an obligation, there must be more than mere negligence or "innocent default." The Court required either an actual knowledge of wrongdoing or its equivalent or a reckless and conscious disregard that conduct will violate a fiduciary duty.

Initially, it was not all that clear at the onset of the Delaware litigation between these entities that either Debtor was a fiduciary. Funds were held by various corporate and partnership entities presumably insulating the owner/manager from personal liability. It was only at the conclusion of the Delaware litigation when Michele Paige was found to have breached a

fiduciary duty and the relationship between Michele and LMF was defined. I further find that there is no evidence either Debtor had a conscious understanding that their activities under the various contracts that bound the parties was wrongful. At best, the Delaware ruling could be interpreted such that Michele Paige conducted the hedge fund in a way to maximize her own self interest. *Bullock*, however, stands for the proposition that simple self dealing is not sufficient to support a loss of dischargeability under § 523(a)(4).

Michele as manager of the fund and Christopher as, at best, a key person, were strongly influenced to enforce the literal terms of the contracts between the parties, albeit for Michele's own benefit and not the fund. This is not a case where a fiduciary of superior knowledge, skill, and background bamboozled an investor with limited knowledge or resources. *SEC v. Bocchino (In re Bocchino)*, 794 F.3d 376 (3rd Cir. 2015). Michelle Paige and LMF both appeared to be well represented in their negotiation creating the funds.

This is where LMF has come up short. Michele's refusal to turn over the total fund to LMF at the end of a three year lock up was primarily motivated by her rather selfish desire that the hedge funds not be dissipated. While the fund remained under her control, she would continue to utilize it to fund expenses including her own income. This was the essential reason why the Delaware Court held her liable for breach of fiduciary responsibility. It was apparent, however, that Michele was not motivated by some malicious motive such as theft of funds, fraud on the principal, or some false pretense. She, rightly or wrongly, relied on a contractual provision allowing her company to "gate" the withdrawal so that only 20% of the investment could be withdrawn each year. This procedure has been recognized as a device to protect fund managers, not the investors. Tr. #261 at 154. It so happens that LMF was by far the only

significant investor and by acting in her own self interest and not that of the client, the Delaware Court found that Michele Paige breached her fiduciary responsibility. Nevertheless, on advice of counsel, both Christopher and an outside attorney, she did rely upon the terms of a contract between the parties in refusing to turn over the investment at the end of the three year "lock up." On examination, Christopher Paige opined, without challenge, that a hedge fund was a compensation vehicle for its manager. It was "a way of hiring an investor [sic] that you couldn't afford to pay a salary." Tr. #261 at 154.

It has been said that adherence to a contract does not violate a duty of good faith. *See, for example, Creeger Brick & Bldg. Supply Inc. v. Mid–State Bank & Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151, 154 (1989). Furthermore, a review of the rather detailed Delaware Court decision reinforces the conclusion that the issues litigated between the parties were certainly intense and acrimonious, but they turned on contractual provisions and not reckless or fraudulent conduct.

It should go without saying that unless Count I could be established against Michele Paige, then Count III alleging that Christopher "aided and abetted" her would also come up short. I find that LMF has failed to meet its burden of proof.

Turning to Counts II and IV alleging willful and malicious injury to LMF, I find that LMF failed to present evidence to support that argument. There is no lack of case law interpreting the meaning of § 523(a)(6). Debts arising from professional malpractice will not be considered "willful and malicious." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998); *In re Conte*, 33 F.3d 303 (3rd Cir. 1994). Even intentional breaches of contract do not amount to willful and malicious injury. *Lockerby v. Sierra*, 535 F.3d 1038 (9th

Cir. 2008) ("Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to start afresh.") *Id.* at 1042.

Succinctly, LMF has simply not met its burden of proof in this Complaint, and a ruling is required in favor of the Debtors.

Inasmuch as there remains related sanction issues, I will defer entering a final judgment in favor of the Debtors until such time as those sanctions issues are disposed so that the appeal times may run concurrently.

By the Court,

Date: March 11, 2016

John J. Thomas, Bankruptcy Judge

(CMS)